IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS JEFFERSON COFFELT, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>CORRECTIONAL MEDICAL SERVICES, )<br>and APRIL DAWSON, M.D., )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:CV07-419-EJL<br><br>**MEMORANDUM DECISION**<br>**AND ORDER** |

Pending before the Court are Defendants' Motion to Dismiss (Docket No. 30), Defendants' Motion for Summary Judgment (Docket No. 31), and Defendants' Motion to Strike May 6, 2009 Statement of Plaintiff (Docket No. 37). Having reviewed the briefing and evidence submitted by the parties, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

### DEFENDANTS' MOTION TO STRIKE

Plaintiff filed a "statement," which appears to be a sur-reply regarding exhaustion of administrative remedies. While such a filing is not appropriate without leave of Court, the Court will permit the filing to stand and liberally construe it as a supplement to Plaintiff's pro se response. As a result, Defendants' Motion to Strike shall be denied.

MEMORANDUM DECISION AND ORDER  1

## DEFENDANTS' MOTION TO DISMISS

### A. Standard of Law

Defendants Correctional Medical Services (CMS) and Dr. April Dawson seek dismissal of Plaintiff's claims that are unexhausted. A complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)). In reviewing a case for dismissal, the Court is required to treat all allegations of material fact as true and to construe them in a light most favorable to the non-moving party. *Id*. (quoting *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986)).

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that where an inmate seeks money damages for a prison conditions claim, he or she must complete the prison administrative process for the claims, even if the process does not provide for money damages. *Booth v. Churner*, 532 U.S. 731 (2001). The prison administrative process is sufficient if it "could provide some sort of relief on the complaint." *Id*. at 734. In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court

MEMORANDUM DECISION AND ORDER  2

confirmed that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532.

If a plaintiff has failed to exhaust his administrative remedies, his claim is subject to dismissal without prejudice upon motion of the defendants. *See Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). An inmate must exhaust his remedies *prior* to filing suit; exhaustion cannot be accomplished during a suit or after a suit has been filed. *See McKinney v. Carey,* 311 F.3d 1198 (2002) (suit dismissed without prejudice where prisoner attempted to exhaust administrative remedies during pendency of suit).

In *Wyatt v. Terhune*, the Ninth Circuit determined that the proper procedural device for alleging nonexhaustion of administrative remedies is "an unenumerated Rule 12(b) motion." 315 F.3d at 1119. To resolve such a motion, "the court may look beyond the pleadings and decide disputed issues of fact." *Id*. at 1119-20. In such instances, the court "has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988). However, the court "must assure that [the petitioner] has [had] fair notice of his opportunity to develop the record." *Id*. at 1120 n.14.

Distinguishing unenumerated 12b motions from motions brought under Rules 12b(6) and 56, the *Ritza* court further explained that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

MEMORANDUM DECISION AND ORDER  3

(internal citations and punctuation omitted).  Because failure to exhaust is an affirmative defense, *Wyatt*, 315 F.3d at 1119, Defendants bear the burden of proving nonexhaustion.

**B.     Facts**

Plaintiff alleges in his Complaint that he received inadequate medical care for his ankle and diabetes condition.  (Complaint, Docket No. 3.)  On July 16, 2005, Plaintiff fell in his cell at the Idaho Correctional Center (ICC), a private prison contracted to house Idaho Department of Correction (IDOC) inmates.  Later that year, Plaintiff had two surgeries on his ankle while incarcerated at ICC.  Dr. Walker, an outside physician, performed both surgeries.  After the surgeries, Plaintiff was transferred to an IDOC facility, the Idaho State Correctional Institution (ISCI).

Defendants summarize the course of Plaintiff's treatment at ISCI as follows:

> He initially was placed in a medical unit, released, developed an infection in his ankle, and brought back to the medical unit.  He was provided medication and an I.V. once the infection allegedly began again.  Around that same time, plaintiff claims to have developed a hole in his right ankle, although it appears he was evaluated and treated by Dave Tomey (a physician's assistant).  He was taken "downtown" where Dr. Walker recast his ankle and leg for a period of eight weeks.  It appears that ankle problems persisted, and he was given a wheelchair, ice, and a cane.  Sometime afterward he again reinjured his ankle, and it allegedly began to swell again.  He was treated by a physician, developed another infection, and was again taken to Dr. Walker.  Dr. Walker performed another operation, and took the plate out of plaintiff's ankle.  After the surgery, plaintiff returned to the medical unit at prison, but continued to be seen by Dr. Walker in follow-up every three months.  He was released and cleared by Dr. Walker in December 2006 from the medical unit.

(Defendants' Memorandum, citing Complaint, App. B; see Affidavit of Dr. April Dawson, Docket No. 31-5.)

MEMORANDUM DECISION AND ORDER  4

The IDOC has a relatively simple grievance procedure.  The inmate first submits an inmate concern form, then a grievance, and then an appeal of the grievance.  (Affidavit of Jill Whittington, Exhibits A and B, IDOC Policy 316 and IDOC Division of Operations Directive 316.02.01.001, Docket No. 30-3).  When the subject of an inmate grievance is prison medical care, the grievance is routed through medical staff employed by the health care contractor, Correctional Medical Services.  (Affidavit of Jill Whittington, ¶ 8.)  The final appeal is reviewed by the CMS health services administrator.  (*Id.*)

Plaintiff filed no grievances in 2005 or 2006.  He submitted two inmate concern forms that are relevant to the pending Motion to Dismiss.  On July 24, 2007, he complained:

> I am having some trouble with my ankle.  it is swelling up on me.  In December of 2006 the doctor down town told me that if it started to give me problems to get in to medical so I can get down town to see him.  Now the doctor in medical told me that the budget won't allow me to but yet I am stuck with it.  Dr. Walker down town said that I would have to go with another operation to get it fixed.  Tell me what I am suppose[d] to do.

(Affidavit of Jill Whittington, Exhibit C, Docket No. 30-3.)  The response was: "Mr. Coffelt, you need to send a concern to Dr. Dawson." (*Id.*)  On August 1, 2007, Plaintiff submitted another inmate concern form with nearly the same information.  There is a staff signature and date of receipt, but no response. [1]

On August 10, 2007, Plaintiff submitted a grievance with the two concern forms

---

[1] Defendants' copy contains a stamp directing Plaintiff to contact the medical department, but Plaintiff's copy does not.  The Court uses Plaintiff's copy for purposes of summary judgment.

MEMORANDUM DECISION AND ORDER  5

attached, stating:

> I broke my ankle (right) in Aug. 2005.  I have had to have 3 surgeries on this ankle.  I am now being told that even though I am still having problems, their budget won't allow any further care.
>
>  I am diabetic.  If something isn't done to correct the problems I am having, I could lose my ankle or leg.  I didn't come to prison to have my leg cut off because of someone's budget.  That was not part of my sentence.  If I can't get proper medical care let me out so I can seek proper care on my own.

(*Id.*)

The first level grievance response was: "Your ankle has been evaluated by multiple providers.  If you feel you have not been treated appropriately, please submit a HSR and discuss it with a medical provider."  (*Id.*)   The second level response was: "I concur with the above statement."  (*Id.*)  The third level response of September 19, 2007 was: "You are being treated appropriately.  Budget doesn't determine what care is medically indicated."  (*Id.*)

### C.     Discussion

It is clear that the only claim Plaintiff has exhausted is that he was provided inadequate medical care for his swollen ankle in July and August 2007.  It is also clear from Plaintiff's inmate concern forms and grievance discussed above that he has the ability to use the grievance system.  Accordingly, the record before the Court does not support Plaintiff's arguments that he has a psychological disability that prevents him from accessing the grievance system, that the prison has no law library, that no medical grievance process exists, and that Defendants have created a barrier to exhaustion.

MEMORANDUM DECISION AND ORDER  6

(Plaintiff's Response and Statement, Docket Nos. 34 & 36.)  In addition, the Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741, n. 6 (2001).  Based on all of the foregoing, Plaintiff's claims regarding inadequate care for diabetes and care for his ankle arising prior to July 2007 shall be dismissed without prejudice.[2]

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The remaining issue before the Court is whether Defendants CMS and Dr. Dawson are entitled to summary judgment on Plaintiff's claim that he received inappropriate treatment for his swollen ankle condition that existed in July and August 2007.

### A.     Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

---

[2] A dismissal without prejudice may function as a dismissal with prejudice if the claims would be time-barred if brought in a new lawsuit.

MEMORANDUM DECISION AND ORDER  7


unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or

MEMORANDUM DECISION AND ORDER  8

admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an

MEMORANDUM DECISION AND ORDER  9

inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

MEMORANDUM DECISION AND ORDER 10

In order to support a claim against PHS or CMS as an entity under the Eighth Amendment and § 1983, Plaintiff must bring forward facts meeting the test articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978).[3] Under *Monell*, requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.  *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).  An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy."  *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), the court outlined the requirement that a defendant have personally participated in the alleged constitutional violation:

> Liability under section 1983 arises only upon a showing of personal

---

[3] *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (cataloguing circuit court cases applying *Monell* to private entities).

MEMORANDUM DECISION AND ORDER  11

participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

**B.     Additional Facts**

As set forth above, Plaintiff's ankle was stabilized and he was released from treatment in December 2006. The record shows that Dr. Dawson treated Plaintiff between March 20, 2006, and July 19, 2006. Plaintiff has not been permitted to proceed on any claims arising from 2006, because his grievance concerned only ankle swelling in July 2007.

Plaintiff submitted an inmate concern form to Dr. Dawson on August 1, 2007, but Dr. Dawson does not recall whether she answered it, and it bears no response except a staff signature (other than Dr. Dawson's) and a date. At the time Plaintiff submitted the inmate concern form, Dr. Dawson was the regional medical director for CMS. Her duties included overseeing the medical care and treatment for Plaintiff and other inmates at ISCI. (Affidavit of April Dawson, ¶¶ 1-2, Docket No. 31-5.)

After his grievance appeal was completed in August 2007, Plaintiff did not submit a health services request form for treatment for his ankle until October 31, 2007. (*Id*., ¶ 18.) Plaintiff was evaluated by a provider other than Dr. Dawson in the medical department on November 8, 2007. Plaintiff's ankle showed minor swelling. His neurological signs and circulation were intact. He received an x-ray on November 12, 2007, which indicated that his right fibular fracture was stable and healed, and no change

from the May 21, 2007 x-ray was noted.  (*Id.*, ¶ 18 & Exhibit A, pp. 10, 11, & 33).

    **C.**    **Discussion**

It is undisputed that Dr. Dawson had responsibility for Plaintiff's medical treatment in 2007.  It is also undisputed that Dr. Dawson did not personally provide treatment to Plaintiff in 2007.  After Plaintiff complained to Dr. Dawson in her capacity as regional medical director, Plaintiff received appropriate follow-up treatment for the swelling in his ankle (whether or not Dr. Dawson was aware of Plaintiff's August 2007 complaint).  The record also reflects that Plaintiff's condition was unchanged between May 2007 and November 2007.  Nothing in the record reflects that surgery or referral to an outside physician was necessary at that time.  It appears that prison staff properly and competently assessed Plaintiff's swelling.  Based on all of the foregoing, the Court concludes that Plaintiff has failed to show (1) that Dr. Dawson was deliberately indifferent to a serious medical need of Plaintiff, or (2) that any refusal of Dr. Dawson to provide Plaintiff with additional or other care caused him harm.  As a result, Dr. Dawson is entitled to summary judgment.

Plaintiff's remaining claim against Defendant CMS fails for the same reason. Plaintiff alleges that a medical care provider told him he could no longer see Dr. Walker, the outside physician, because of budget restraints.  It is worth repeating that an inmate "is not entitled to demand specific care"; neither is he "entitled to the best care possible." *Forbes v.  Edgar*, 112 F.3d at 267.  Rather, he "is entitled to reasonable measures to meet a substantial risk of serious harm to [him]." *Id*.  Therefore, even if CMS had a policy

MEMORANDUM DECISION AND ORDER  13

providing that its doctors should use the most conservative diagnostic tools for inmate health care, such a policy does not establish deliberate indifference by itself. *See Collignon v. Milwaukee County*, 163 F.3d at 989 (recommending a less expensive treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances."). Moreover, even if such a policy existed, it did not cause the individual health care providers to provide constitutionally deficient treatment in this instance, because the Court has found that the treatment rendered by the CMS health care providers met Eighth Amendment standards as set forth in *Estelle v. Gamble*. *See* 429 U.S. at 103-04. Therefore, CMS is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

Plaintiff further argues that Defendants are responsible for notifying him of the identities of the other doctors and medical staff who provided treatment. Again, because the treatment provided by the unidentified doctors and medical staff was not sub-standard for the time period at issue, Plaintiff would not have been able to prevail on an Eighth Amendment theory had he sued the doctors and staff who personally treated him. Plaintiff also argues that Defendants' statement of contested facts is, in fact, contested. However, the facts relied upon are documented in Plaintiff's prison and medical records. Plaintiff provides no particular facts to show that the records are inaccurate; nor has he provided other evidence to create a genuine issue of material fact. As a result, the Court rejects Plaintiff's arguments and concludes that entry of summary judgment is warranted.

MEMORANDUM DECISION AND ORDER 14

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A. Defendants' Motion to Dismiss (Docket No. 30) is GRANTED as to all claims other than the complaint of a swollen ankle that arose in July 2007.

B. Defendants' Motion for Summary Judgment (Docket No. 31) is GRANTED on all remaining claims.

C. Defendants' Motion to Strike May 6, 2009 Statement of Plaintiff (Docket No. 37) is DENIED.

D. Plaintiff's entire case is DISMISSED; those claims dismissed by the Order granting the Motion to Dismiss are dismissed without prejudice, and those claims dismissed by the Order granting the Motion for Summary Judgment are dismissed with prejudice.

E. The settlement conference set in this matter for June 17, 2009, at 9:30 a.m. is VACATED.

DATED: **June 4, 2009**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM DECISION AND ORDER 15